## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

THE GEO GROUP, INC. and
GEO TRANSPORT, INC.

                                              CIVIL CASE NO. _____

                       Plaintiffs,

    v.

NETFLIX, INC.,

                       Defendants.

_____/

      Plaintiffs, The GEO Group, Inc. and its subsidiary GEO Transport, Inc. (collectively, "GEO"), by and through their undersigned counsel, hereby file the following Complaint against Defendant Netflix, Inc., and in support of their Complaint, allege as follows:

## COMPLAINT

      1.     This action arises from the Netflix Original Series, *Messiah*, which—through scenes of an immigrant detention facility, guards, and vehicles bearing GEO's misappropriated trademarks and name—falsely accuses GEO of detaining immigrants in overcrowded overheated rooms with chain-link cages and depriving them of beds, bedding, sunshine, recreation, and educational opportunities.

      2.     Unlike in *Messiah*, GEO does not house people in overcrowded rooms with chain-link cages at its Facilities, but provides beds, bedding, air conditioning, indoor and outdoor recreational spaces, soccer fields, classrooms, libraries, and other amenities that rebut *Messiah*'s defamatory falsehoods:[1]

---

[1] "GEO Facilities" or "Facilities" refers to the facilities GEO manages and operates on behalf of U.S. Immigration and Customs Enforcement.

| GEO Facilities | Facility in *Messiah* |
|---|---|



3.  Netflix broadcast its defamatory falsehoods about GEO with actual malice, either knowing or recklessly disregarding that they were false, including by purposefully avoiding or intentionally disregarding numerous publicly available sources rebutting its false accusations, purposefully avoiding contacting GEO for information about its Facilities or permission to use its trademarks, and—when specifically put on notice of the truth about the conditions at GEO Facilities and asked to retract—refusing to do so.

4.      Netflix first premiered *Messiah*—including the episodes featuring GEO's name and trademarks—on January 1, 2020, and the show has since been accessed by, and remains accessible to, millions of Netflix subscribers and viewers.[2]

5.      With its portrayal of unconscionable and inhumane conditions at an immigrant detention facility bearing GEO's name and trademarks, Netflix is willfully damaging GEO's reputation, infringing on GEO's trademarks, causing confusion as to GEO's approval or endorsement of Netflix's use of GEO's trademarks, and denigrating the reputation and goodwill of GEO's trademarks.

6.      Netflix's defamatory accusations and misappropriation have caused and continue to cause GEO irreparable harm.

7.      GEO brings this action to set the record straight, to vindicate its rights under civil law, to enjoin Netflix's infringement of its trademarks, and to recover compensatory and punitive damages for the harm Netflix has caused.

## PARTIES

8.      Plaintiff The GEO Group, Inc. is a real estate investment trust that provides diversified and cost-effective services to help local, state, and federal governments in the United States and abroad meet their respective needs.  These services include constructing and managing safe and secure detention facilities, processing centers, and reentry facilities.  The GEO Group, Inc. has built a reputation and goodwill on its commitment to respecting the human rights of

---

[2] Pursuant to this Court's CM/ECF Administrative Procedures and the Office of the Clerk's Civil Filing Requirements, Plaintiffs intend to file a motion requesting that this Court enter an order permitting the filing of a DVD containing exhibits to this Complaint.  The DVD contains the defamatory scenes (Ex. A) and the complete episodes 3 and 4 of *Messiah* with annotations (Ex. B). These Exhibits are incorporated by reference into this Complaint.

detained immigrants in its care.  The GEO Group, Inc. is incorporated in Florida, and its principal place of business is in Boca Raton, Florida.

9.      Plaintiff GEO Transport, Inc., is The GEO Group, Inc.'s in-house transportation subsidiary which provides secure transportation to and from the Facilities.  GEO Transport, Inc. is incorporated in Florida and its principal place of business is in Boca Raton, Florida.

10.     Defendant Netflix, Inc. is one of the world's largest streaming entertainment services with over 183 million paid memberships in over 190 countries; it generated over $20 billion in revenue during 2019.[3]  Netflix also serves as a large production company and has created, developed, and produced original movies and television series, which Netflix premieres on its platform.  Netflix is a Delaware corporation headquartered in California.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  This Court further has federal question subject matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1121 for claims arising under the Lanham Act, and supplemental jurisdiction under 28 U.S.C. § 1367 for the other claims as they are so related to the Lanham Act claims that they form part of the same case and controversy.

12.     This Court has personal jurisdiction over Netflix pursuant to Florida's long-arm statute, Fla. Stat. § 48.193(1)-(2) and under the Due Process Clause because:

        a)      Netflix advertised and promoted *Messiah* to Florida residents by airing

---

[3] *Media*, NETFLIX (last visited May 13, 2020), https://media.netflix.com/en/about-netflix (Ex. C); Q4 2019, Letter from Netflix to Shareholders, (Jan. 21, 2020) https://s22.q4cdn.com/959853165/files/doc_financials/2019/q4/FINAL-Q4-19-Shareholder-Letter.pdf?mod=article_inline (Ex. D).

trailers and, as intended, such advertisements were viewed by Florida residents;[4]

b)      Netflix published the defamatory episodes on its website (and through its apps which are available on mobile devices and various streaming platforms), and the episodes were assessible in Florida and accessed in Florida by Florida residents, constituting the commission of tortious acts within Florida;[5]

c)      Netflix published the defamatory and infringing episodes concerning the Plaintiffs and thereby committed intentional torts expressly aimed at Plaintiffs, the effects of which were suffered in this District;

d)      Netflix is registered to do business in Florida;[6]

e)      Netflix pays taxes to the State of Florida;[7]

f)      Netflix had offices in Florida until at least 2019;[8]

g)      Netflix is engaged in substantial and not isolated activity within Florida, including sending its employees and contractors to Florida for work-related purposes, filming in Florida, conducting information gathering in Florida, and producing shows featuring Florida and Florida residents;[9]

h)      Netflix regularly solicits business from Florida residents, regularly enters into contracts with Florida residents, and derives revenue from Florida residents.

13.      Venue is proper under U.S.C. § 1391 (b), (c), and (d) because, as set forth above,

the torts occurred in Palm Beach, County Florida and the harm was felt in Palm Beach County,

---

[4] *See, e.g.*, Kevin McDonough, *Tune in Tonight: Netflix streams second coming thriller 'Messiah'*, JACKSONVILLE.COM               (Jan.               1,               2020), https://www.jacksonville.com/entertainment/20200101/tune-in-tonight-nextflix-streams-second-coming-thriller-messiah (Ex. E); *Netflix, If the Messiah showed up today, what would you do?*, YOUTUBE (Dec. 16, 2019), https://www.youtube.com/watch?v=R_SgtQBpMh0; Netflix, Messiah    -    Year    in    Review,    YOUTUBE    (Jan.    1,    2020), https://www.youtube.com/watch?v=bOH4GYvnvN4.

[5] *See e.g.,* TV Guide, *Netflix's First Trailer for Messiah Previews a Different Kind of Social Media Scammer*,    THE    PALM    BEACH    POST    (Dec.    3,    2019), https://www.palmbeachpost.com/ZZ/entertainment/20191203/netflixs-first-trailer-for-messiah-previews-different-kind-of-social-media-scammer (Ex. F); *Help Center*, NETFLIX (last visited May 13, 2020), https://help.netflix.com/en/node/14164 (Ex. G).

[6] *See* Netflix, Inc. Foreign Profit Corp. Details for Fla. (Ex. H).

[7] *See* General Taxes, Fla. Dep't of Revenue, https://www.stateofflorida.com/taxes/ (Ex. I).

[8] *See* Netflix Offices in Fla. (Ex. J).

[9] Examples of Netflix's activities in Florida are included within Ex. K.

Florida in that GEO is headquartered in Palm Beach County, Florida; because Netflix is subject to this Court's personal jurisdiction; and because Netflix is a corporation that is subject to personal jurisdiction in Florida and its contacts with the Southern District of Florida would be sufficient to subject it to personal jurisdiction if this district were a separate State.

14.     All conditions precedent to this action have been performed.  GEO provided Netflix with pre-suit notice and a demand for a retraction pursuant to Florida Chapter 770.01, *et seq*.

## FACTS

### GEO Operates State-of-the-Art Facilities for U.S. Immigration and Customs Enforcement

15.     On behalf of U.S. Immigration and Customs Enforcement, GEO operates state-of-the-art Facilities that provide safe, secure, and humane environments.

16.     Upon arrival at a GEO Facility, each person is given his or her own bed, bedding, and a handbook that provides information "regarding everything from intake to release, with an emphasis on how to access information requests, grievances, medical care, legal services, food services, education, telephone, visitation and recreation."[10]

---

[10]     Human Rights & ESG Rpt., The GEO GROUP, https://www.geogroup.com/Portals/0/HumanRightsESG2018.pdf (Ex. L).

17.     GEO Facilities provide soccer fields, gymnasiums, and other recreational spaces:








18.    GEO Facilities provide libraries, classrooms, and computers:



  

19.   GEO Facilities offer indoor and outdoor spaces where people can sit and socialize:





20.    GEO Facilities provide beds, flat-screen televisions, game tables, and telephones:








21.     GEO Facilities are not overcrowded; for example, the table below shows that the GEO Facilities in Texas are well below their population capacity:

| Texas GEO Facility | Average Daily Population[11] | Capacity |
|---|---|---|
| Karnes County Family Residential Center | 184 | 830[12] |
| Montgomery Processing Center | 881 | 1000[13] |
| Rio Grande Processing Center | 441 | 1900[14] |
| South Texas ICE Processing Center | 1456 | 1904[15] |

***GEO Has Trademarks in Its Name and Logo***

22.     The GEO Group, Inc. and its in-house subsidiary GEO Transport, Inc. (collectively, "GEO") obtained trademarks ("GEO Trademarks") in the GEO name and logos to distinguish GEO and to build and develop GEO's brand as a company that provides humane environments.

23.     The GEO Group, Inc. registered "THE GEO GROUP, INC." in connection with (1) the "business administration and management of prison and detention-related facilities for others"; (2) "financing services relating to the construction of prison and detention-related facilities"; (3) "custom construction of prison and detention-related facilities"; and (4) the "design of prison and detention-related facilities for others."[16]

---

[11] ICE Dedicated Facility List, as of February 2020 (Ex. M)
[12] *Facility Detail, Karnes Cty. Family Residential Ctr.*, THE GEO GROUP, https://www.geogroup.com/FacilityDetail/FacilityID/58 (Ex. N).
[13] *Facility Detail, Montgomery Processing Ctr.*, THE GEO GROUP, https://www.geogroup.com/FacilityDetail/FacilityID/249 (Ex. O).
[14] *Facility Detail, Rio Grande Processing Ctr.*, THE GEO GROUP, https://www.geogroup.com/FacilityDetail/FacilityID/76 (Ex. P).
[15] *Facility Detail, S. Tex. ICE Processing Ctr.*, THE GEO GROUP, (Ex. Q).
[16] *See* Ex. R, Reg. No. 3276095.

24.    The GEO Group, Inc. also registered the following design and letters in connection with: (1) business administration and management of prison and detention related facilities for others; (2) "financing services relating to the construction of prison and detention-related facilities"; (3) "custom construction of prison and detention-related facilities"; (4) the "design of prison and detention-related facilities for others"; and (5) national monitoring services of community-based parolees, probationers, and pre-trial defendants.[17]



25.    The GEO Group, Inc.'s in-house subsidiary GEO Transport, Inc. registered the Word Mark consisting of the following design and letters, in connection with domestic and international transportation services:[18]



---

[17] *See* Ex. S, Reg. No. 4432031.
[18] *See* Ex. T, Reg. No. 4240386.

26.     GEO utilizes GEO Trademarks on the badges worn by its security guards at its Facilities and on its vehicles, as shown in the examples below:





***Netflix Intentionally Misappropriates GEO's Trademarks
for Use in Its Netflix Original Series Messiah***

27.     In June 2018, Netflix began filming for the Netflix Original Series, *Messiah*.

28.     The plot for *Messiah* features the protagonist entering the United States unlawfully and being taken into custody outside of San Antonio, Texas.

29. Rather than portraying a facility run by a fictitious company or the U.S. government, Netflix made a deliberate decision to misappropriate GEO Trademarks so that it could falsely portray GEO in *Messiah*:



| Examples of GEO's Use of GEO Trademarks | Examples of Netflix's Use of GEO Trademarks in *Messiah* |
|---|---|

30.     Netflix plastered GEO Trademarks on the side of a bus featured toward the end of episode 3, foreshadowing the protagonist's impending detention at the facility in episode 4:



31.     Netflix also placed GEO's Trademarks on vehicles in the parking lot of the facility featured in episode 4:



15

32.     Guards at the facility were dressed in GEO uniforms bearing GEO's distinctive blue, white, and green badge, and were portrayed throughout scenes of the facility in episode 4:







33.     Netflix even created a sign that read "Parking for DHS and GEO only" and affixed

it to the outside of the facility featured in episode 4:



***Through Scenes of the Facility in Messiah,***
***Netflix Misrepresents Numerous Facts About GEO***

34.     In episode 4 of *Messiah*, Netflix portrays people at the facility spending day and night crammed together in an overcrowded room with chain-link cages and no beds, sitting or trying to sleep on hard concrete floors and wooden benches with only a handful of mylar blankets and no blankets of any kind for most of the people in the room:







35.     Netflix also conveys that the facility lacks needed air conditioning, by depicting overheated, sweaty, and parched people suffering around outdated box fans, talking about trying to stay cool, and desperately drinking water:



36.     Through the scenes of the facility bearing GEO's name and trademarks in *Messiah*, Netflix intended to and did falsely accuse GEO of detaining immigrants in overcrowded overheated rooms with chain-link cages and depriving them of beds, bedding, sunshine, recreation, and educational opportunities.

### *Netflix Knew or Recklessly Disregarded the Truth*

37.     Netflix knew or recklessly disregarded the facts about GEO.

38.     Because Netflix replicated GEO's distinct badges and transportation logos, it is evident that Netflix researched GEO, and likely accessed GEO's website, before filming.

39.     GEO's website contains detailed information about its Facilities, including images and other evidence rebutting Netflix's defamatory falsehoods.

40.     GEO's Human Rights and ESG Report—which is publicly available on GEO's website—makes clear that GEO Facilities do not have chain-link fencing in housing areas, are air conditioned, and offer recreational, educational, and spiritual amenities.[19]

41.     GEO's website also contains aerial images of its Facilities, which show some of their outdoor recreational amenities, such as soccer fields and pavilions:[20]



42.     GEO's website also contains brief descriptions of each of the Facilities, which highlight the educational and recreational amenities.  For example, in the "Facility Description" section for the Montgomery Processing Center shown above, the website states that the Facility has "programming spaces and classrooms, outdoor recreation including three new artificial turf soccer fields, day rooms with large TVs, law library with LexisNexis computer stations, employee training room, and comprehensive world class medical, dental, and mental health care including a

---

[19]     *Human Rights & ESG Rpt.*, THE GEO GROUP, https://www.geogroup.com/Portals/0/HumanRightsESG2018.pdf (Ex. L).

[20] *Locations*, THE GEO GROUP, https://www.geogroup.com/Locations (Ex. U); *Facility Detail, Montgomery Processing Ctr.*, THE GEO GROUP, https://www.geogroup.com/FacilityDetail/FacilityID/249 (Ex. O).

daily sick call and 24-hour emergency care."[21]

43.     GEO's website also contains information about its commitment to respecting the human rights of everyone in its care.[22]  This information includes GEO's global human rights policy and human rights training module, and explains that GEO has modeled its Human Rights policy off the United Nations' Universal Declaration of Human Rights and International Labour Organization's 1998 Declaration on Fundamental Principles and Rights at Work.[23]

44.     In spite of the above, Netflix purposefully ignored or recklessly disregarded the publicly available facts, which rebut Netflix's defamatory falsehoods about GEO.

45.     Netflix also purposefully avoided reaching out to GEO to ask for permission to use the GEO Trademarks, or to ask about the real conditions at GEO Facilities.

46.     Netflix's use of the GEO Trademarks served no purpose other than to harm GEO's good will and reputation.  Because GEO's Facilities do not resemble the facilities depicted in *Messiah*, use of the GEO Trademarks does not further a goal of realism.  Because Netflix researched GEO during the process of producing *Messiah*, it was aware that use of the GEO Trademarks did not further a goal of realism or serve any purpose other than to harm GEO's good will and reputation.  Nevertheless, with intent to harm GEO or with reckless disregard that its statements would harm GEO, Netflix chose to use the GEO Trademarks anyway.  Upon information and belief, discovery will reveal additional evidence demonstrating that Netflix's

---

[21]  *See Facility Detail, Montgomery Processing Ctr.*, THE GEO GROUP, https://www.geogroup.com/FacilityDetail/FacilityID/249 (Ex. O).

[22]  *GEO's Commitment to Respect Human Rights*, THE GEO GROUP, https://www.geogroup.com/GEOs-Commitment-to-Respect-Human-Rights (Ex. V).

[23]  *GEO Human Rights Policy*, THE GEO GROUP, https://www.geogroup.com/Portals/0/SR/Human%20Rights/GEO%20Human%20Rights%20Policy.pdf (Ex. W); *GEO Human Rights Training*, THE GEO GROUP, https://www.geogroup.com/Portals/0/SR/Human%20Rights/GEO%20Human%20Rights%20Training.pdf (Ex. X).

motivation in using GEO's Trademarks had nothing to do with any belief that use of the GEO Trademarks was relevant to *Messiah,* but was done in order to maliciously harm GEO, in furtherance of a mistaken assumption that Netflix is free to use any trademarks in connection with its productions without regard to their relevance to the production, or for some other unprotected reason.

47.     On March 11, 2020, GEO sent a letter putting Netflix on formal written notice of the facts and demanding that Netflix remove the GEO Trademarks and name from the show.[24] Netflix refused.[25]

### *Netflix Harmed and Continues to Harm GEO*

48.     Netflix's false accusations about GEO have damaged GEO's reputation and tarnished the GEO Trademarks.

49.     Netflix's misuse of the GEO Trademarks in connection with the facility featured in *Messiah* has confused and deceived the public into believing that the featured facility is a real GEO Facility or is associated with or sanctioned by GEO—all to the damage and detriment of GEO's reputation, goodwill, and profits.

### *COUNT ONE*
### *DEFAMATION*

50.     GEO re-alleges the allegations set forth above as if fully set forth herein.

51.     On January 1, 2020, through scenes depicting an immigrant detention facility, guards, and vehicles bearing the GEO Trademarks and name in episodes 3 and 4 of the Netflix Original Series *Messiah*, Netflix published false and defamatory statements of fact about GEO, namely, that GEO detains immigrants in overcrowded overheated rooms with chain-link cages and

---

[24] *See* Letter from GEO Group to Netflix, Inc. (Mar. 11, 2020) (Ex. Y).
[25] *See* Letter from Netflix, Inc. to GEO Group (May 5, 2020) (Ex. Z).

deprives them of beds, bedding, sunshine, recreation, and educational opportunities.  (*See* Ex. A.)

52.     These statements are defamatory and defamatory *per se* because they subject GEO to hatred, distrust, ridicule, contempt, and disgrace and impugns its method of operating and managing Facilities.

53.     Netflix's statements are reasonably understood to be statements of fact about GEO.

54.     Netflix's statements about GEO are false.  GEO does not house people in overcrowded rooms with chain-link cages at its Facilities, but provides beds, bedding, air conditioning, indoor and outdoor recreational spaces, soccer fields, classrooms, libraries, and other amenities that rebut *Messiah*'s defamatory falsehoods.

55.     Netflix had no applicable privilege or legal authorization to publish these false and defamatory statements about GEO or, if it did, it abused it.

56.     As set forth above, Netflix acted with actual malice, either knowing or recklessly disregarding that its statements about GEO were false, including by purposefully avoiding or intentionally disregarding numerous publicly available sources rebutting its false accusations, purposefully avoiding contacting GEO for information about its Facilities or permission to use the GEO Trademarks, and–when specifically put on notice of the truth about the conditions at GEO Facilities and asked to retract—refusing to do so.  Upon information and belief, discovery will reveal additional evidence of Netflix's actual malice.

57.     Netflix made these false and defamatory statements about GEO intentionally, willfully, maliciously, and in conscious disregard of GEO's rights and reputation and of the truth.

58.     Upon information and belief, episodes 3 and 4 of *Messiah* have been accessed by millions of Netflix subscribers and viewers, including subscribers and viewers in the State of Florida.  Since January 1, 2020, those episodes have also been republished nationwide on Netflix's

streaming services, including to subscribers in the State of Florida.

59.     As a direct and foreseeable result of Netflix's false and defamatory accusations, GEO has suffered reputational harm.

60.     As a result of Netflix's false and defamatory accusations, GEO has been forced to make an expenditure of money to remedy the defamation.

61.     In view of the foregoing, GEO is entitled to compensatory, punitive, and other damages in an amount to be specifically determined at trial.

## COUNT TWO
## FEDERAL TRADEMARK INFRINGEMENT
## (15 U.S.C. § 1114)

62.     GEO re-alleges the allegations set forth above as if fully set forth herein.

63.     GEO is the owner of its above-identified GEO Trademarks and has federally registered the GEO Trademarks in connection with a variety of services.  The GEO Trademarks are valid and protectable.

64.     In addition to trademark registrations, GEO has actively engaged in and developed services using the GEO Trademarks.

65.     Without the consent of GEO, Netflix has used the GEO Trademarks as its own to unfairly and unlawfully misappropriate GEO's goodwill.

66.     Netflix has used the GEO Trademarks in commerce in connection with goods and services confusingly similar to the goods and services offered by GEO in connection with the GEO Trademarks.

67.     Netflix did not and does not have GEO's consent to use the GEO Trademarks.

68.     GEO informed Netflix that Netflix did not have GEO's consent to use the GEO Trademarks and requested that Netflix stop using them.

69.     Netflix's use of the GEO Trademarks on goods and services that are confusingly

similar to those offered by GEO is likely to cause confusion among consumers and potential consumers as to the source, sponsorship, affiliation, or approval of goods and services sold by Netflix in connection with their infringing marks.

70.     GEO has been harmed reputationally by Netflix's use of the GEO Trademarks and should be awarded damages in an amount to be determined at trial.

71.     If Netflix continues to use the GEO Trademarks, GEO is likely to continue to suffer harm without judicial intervention.

72.     On information and belief, Netflix's actions have been intentional, with knowledge, willful, with actual malice, and in bad faith, justifying the imposition of enhanced damages.

73.     Netflix's knowing and willful infringement of the GEO Trademarks warrants an award of treble damages.

74.     Netflix has been enriched by wrongfully usurping GEO's hard-earned goodwill, and any profits should be disgorged and awarded to GEO.

75.     Netflix's actions make this case exceptional within the meaning of 15 U.S.C. § 1117(a), thereby entitling GEO to an award of reasonable attorneys' fees and costs.

76.     GEO has already incurred, and will continue to incur, significant costs in prosecuting Netflix's willful infringement of the GEO Trademarks.

77.     GEO has no adequate remedy at law for the irreparable injury and other damage Netflix is causing to GEO's reputation and goodwill.

### COUNT THREE
### UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(A)(1)(a))

78.     GEO re-alleges the allegations set forth above as if fully set forth herein.

79.     GEO is the owner of its above-identified GEO Trademarks and has federally registered the Trademarks in connection with a variety of services.  The GEO Trademarks are valid

and protectable.

80.     In addition to trademark registrations, GEO has actively engaged in and developed services using the GEO Trademarks.

81.     Defendant's use of the GEO Trademarks constitutes a false designation of origin, a false or misleading description of a fact, or a false or misleading representation of fact that is likely to cause confusion, mistake, or deception in violation of Lanham Act § 43(a), 15 U.S.C. § 1125(A)(1)(a).

82.     Netflix has adopted and is using the GEO Trademarks in a manner that is likely to cause confusion, and is causing confusion, mistake, and deception among the general public as to the origin and affiliation of Netflix with GEO.

83.     Netflix is likely to deceive the public into believing that the references to the GEO Trademarks in episodes 3 and 4 of the series *Messiah* originate from, are associated with, or are otherwise authorized by GEO, all to the damage and detriment of GEO's reputation, goodwill, and profits.

84.     On information and belief, Netflix's actions have been intentional, with knowledge, willful, with actual malice, and in bad faith, justifying the imposition of enhanced damages.

85.     As described in detail above, Netflix has adopted and is using the GEO Trademarks with the knowledge that its imitation is intended to be used to cause confusion, mistake, or deception.

86.     Netflix has unlawfully derived, and will continue to unlawfully derive, income and profits from these infringing acts, and GEO has sustained and will continue to sustain substantial injury, loss, and damage in an amount to be determined at trial.

87.     Netflix's willful infringement has caused and will continue to cause GEO

irreparable harm and injury to its goodwill and reputation, and unless the Court enjoins such conduct, GEO may have no adequate remedy at law.

88.     Defendants' actions make this case exceptional within the meaning of 15 U.S.C. § 1117(a), thereby entitling GEO to an award of reasonable attorneys' fees and costs.

## COUNT FOUR
## VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (Fla. Stat. § 501.204)

89.     GEO re-alleges the allegations set forth above as if fully set forth herein.

90.     The above wrongful acts constitute unfair competition in violation of the Florida Unfair and Deceptive Trade Practices Act.

91.     Netflix has engaged in unfair methods of competition and unconscionable and deceptive acts or practices in the conduct of trade or commerce.

92.     Netflix's actions have caused and will continue to cause GEO irreparable harm and injury to its goodwill and reputation, and unless the Court enjoins such conduct, GEO may have no adequate remedy at law.

## COUNT FIVE
## FLORIDA COMMON LAW TRADEMARK INFRINGEMENT

93.     GEO re-alleges the allegations set forth above as if fully set forth herein.

94.     The GEO Trademarks are valid and protectable.

95.     Without the consent of GEO, Netflix has used the GEO Trademarks as its own to unfairly and unlawfully misappropriate GEO's goodwill.

96.     Netflix's use of the GEO Trademarks on goods and services that are confusingly similar to those offered by GEO is likely to cause confusion among consumers and potential consumers as to the source, sponsorship, affiliation, or approval of goods and services sold by Netflix in connection with their infringing marks.

97.     GEO has been harmed reputationally by Netflix's use of the GEO Trademarks and should be awarded damages in an amount to be determined at trial.

98.     If Netflix continues to use the GEO Trademarks, GEO is likely to continue to suffer harm without judicial intervention.

99.     On information and belief, Netflix's actions have been intentional, with knowledge, willful, with actual malice, and in bad faith, justifying the imposition of enhanced damages.

100.    GEO has no adequate remedy at law for the irreparable injury and other damage Netflix is causing to GEO's reputation and goodwill.

## COUNT SIX
## FLORIDA COMMON LAW UNFAIR COMPETITION

101.    GEO re-alleges the allegations set forth above as if fully set forth herein.

102.    The GEO Trademarks are valid and protectable.

103.    Netflix has adopted and is using the GEO Trademarks in a manner that is likely to cause confusion, and is causing confusion, mistake, and deception among the general public as to the origin and affiliation of Netflix with GEO.

104.    Netflix is likely to deceive the public into believing that the references to the GEO Trademarks in episodes 3 and 4 of the series *Messiah* originate from, are associated with, or are otherwise authorized by GEO, all to the damage and detriment of GEO's reputation, goodwill, and profits.

105.    On information and belief, Netflix's actions have been intentional, with knowledge, willful, with actual malice, and in bad faith, justifying the imposition of enhanced damages.

106.    GEO has no adequate remedy at law for the irreparable injury and other damage Netflix is causing to GEO's reputation and goodwill.

## PRAYER FOR RELIEF

WHEREFORE, GEO respectfully requests that the Court enter an award in GEO's favor, and against Netflix, as follows:

(1)    A temporary restraining order, a preliminary injunction, and permanent injunctive relief restraining Netflix and any of Netflix's officers, agents, servants, employees, and all persons in active concert or participation with Netflix from using the GEO Trademarks or any other name or mark confusingly similar thereto or using any trademark, trade name, logo, business name or other identifier or acting in any fashion which may be calculated to falsely represent that the goods and services provided, promoted, or offered by Netflix are sponsored by, authorized by, licensed by, or in any other way associated with GEO;

(2)    An award of compensatory damages in an amount to be determined at trial;

(3)    An award of punitive damages in an amount to be determined at trial;

(4)    An equitable accounting and an award of Netflix's profits or GEO's damages, whichever is greater, arising from Netflix's trademark infringement, false designation of origin, and unfair competition, and such damages or profits are to be trebled pursuant to 15 U.S.C. § 1117 and otherwise by reason of the willfulness of Netflix's acts;

(5)    An award of attorneys' fees and costs of the suit incurred herein; and

(6)    Such other and further relief as the Court deems appropriate.

A JURY TRIAL IS DEMANDED.

Dated:  May 27, 2020

Respectfully Submitted,

/s/ Shannon B. Timmann

Shannon B. Timmann, Esq. (Fl. Bar. No. 98810)
Megan L. Meier, Esq. (*Pro Hac Vice*
Application Forthcoming), Va. Bar No. 887220
CLARE LOCKE LLP
10 Prince Street
Alexandria, VA 22314
Telephone: (202) 628-7400
Email: megan@clarelocke.com
Email: shannon@clarelocke.com

Barry F. Irwin, P.C. (*Pro Hac Vice* Application
Forthcoming), Ill. Bar No. 6211213
Manon L. Burns (*Pro Hac Vice* Application
Forthcoming), Ill. Bar No. 632495
**Irwin IP LLC**
222 South Riverside Plaza, Suite 2350
Chicago, IL 60606
Phone: 312.667.6080
Email: birwin@irwinip.com
Email: mburns@irwinip.com

*Attorneys for Plaintiffs*