UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 9:20-cv-80847-RJS

THE GEO GROUP, INC. and
GEO TRANSPORT, INC.

        Plaintiffs,

v.

NETFLIX, INC.,

        Defendant.
_____/

**DEFENDANT NETFLIX, INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTION
PURSUANT TO SECTION 768.295 OF THE FLORIDA STATUTES**

Defendant Netflix, Inc. ("Netflix") respectfully submits this reply in further support of its motion for an award of attorneys' fees against the plaintiffs, The GEO Group, Inc. ("GEO Group") and GEO Transport, Inc. ("GEO Transport") (collectively, "GEO" or "Plaintiffs") pursuant to Florida Statutes Section 768.295, Strategic Lawsuits Against Public Participation (SLAPP) Prohibited (the "Florida anti-SLAPP statute").

## PRELIMINARY STATEMENT

Florida's anti-SLAPP statute is designed to protect expressive works, such as television programs, from plaintiffs who seek to suppress the First Amendment right of free speech. *See* Fla. Stat. Ann. § 768.295(1)-(2)(a). The Florida anti-SLAPP statute applies not only to "activists, journalists, and ordinary citizens," (D.E. 39 at 5), as Plaintiffs claim, but also to media defendants responsible for publishing popular television programs.

Netflix's *Messiah* is a fictional work, created by talented writers, actors, directors, and editors, which explores the intersection of religious belief and government power. *Messiah* involves the tense relationship between a CIA officer and a spiritual leader, who emerges out of nowhere, and is considered by some as the second coming, and others as a charlatan. In one of its ten episodes, *Messiah* includes a short narrative arc in which the spiritual leader is briefly held at an immigration detention facility. The remainder of the series has nothing to do with this facility.

Plaintiffs' exaggerated papers would lead a reader to believe that *Messiah* is an exposé centered on GEO, and that GEO is a constant focal point of the series. Plaintiffs decry, for example, that Netflix "stole" GEO Group's intellectual property, and "destroyed" its goodwill.[1] In reality, GEO at best appears in ***a collective total of 28 seconds*** – less than .001 percent – of the approximate 27,000 seconds of *Messiah*. Even in these scattered snippets, GEO's name is barely visible and used fleetingly in the background. In fact, the use of the GEO name is so imperceptible that

---

[1] Despite Plaintiffs' far-fetched David-and-Goliath rhetoric, the reality is that GEO Group is a private prison company with over two billion dollars in annual revenue, and it has chosen to expend its vast resources to launch a constitutionally infirm suit to punish artists behind a television show.

Plaintiffs were forced to resort to using cropped, enlarged screen shots of *Messiah* in their Complaint, and insert "look here" arrows. Although *Messiah's* audience likely missed the brief flashes of GEO's name, Plaintiffs filed this over-the-top litigation: GEO Transport, for example, seeks to burden the Court with *six* claims based on a two-second glimpse of a GEO Transport bus – or, three claims per second.

Now, faced with dismissal and fee motions, Plaintiffs resort to technical arguments to escape the attorneys' fee award that should befall them for their baseless filing. Plaintiffs argue that the Florida anti-SLAPP statute does not apply in Federal court under the *Erie* doctrine. This argument is incorrect and had been soundly, and repeatedly, rejected by the Eleventh Circuit and this Court, which have both awarded attorneys' fees under the Florida anti-SLAPP statute in Federal Court. The anti-SLAPP statute reflects the Florida legislature's decision to *substantively* alter the law pertaining to First Amendment litigation by providing recompense to a defendant who is subject to a meritless claim brought to chill its First Amendment rights.

A review of *Messiah* confirms that Plaintiffs brought this action knowing that it lacked merit and for an improper purpose, specifically, to file a glorified press release designed to whitewash years of negative publicity involving human rights violations at its facilities. This is a textbook case in which attorneys' fees should be awarded under Florida's anti-SLAPP statute. This Court should grant Netflix's motion.

## LEGAL ARGUMENT

I. **THE FLORIDA ANTI-SLAPP STATUTE'S FEE SHIFTING PROVISION IS A *SUBSTANTIVE* ASPECT OF FLORIDA STATE LAW THAT APPLIES IN FEDERAL COURT**

The law of defamation in Florida is subject to the substantive statutory provisions of the anti-SLAPP statute, which expressly memorializes the legislature's intent to prevent the costs of litigation from becoming weaponized to suppress free speech. "It is the public policy of this state that a person or governmental entity not engage in SLAPP suits because such actions are inconsistent with the right of persons to exercise such constitutional rights of free speech in

connection with public issues. Therefore, the Legislature finds and declares that prohibiting such lawsuits as herein described will preserve this fundamental state policy." Fla. Stat. Ann. § 768.295(1).

Netflix's Motion to Dismiss is made pursuant to Federal Rule of Civil Procedure 12(b)(6), but its request for attorneys' fees and costs is premised on Plaintiffs' defamation claims and the substantive law of Florida. Just as this Court is bound to evaluate the sufficiency of Plaintiffs' defamation claims under Florida law, *e.g.*, *Jews For Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1105 (Fla. 2008), this Court is equally bound by the Florida statute that mandates an award of attorneys' fees for meritless suits brought to impinge upon First Amendment rights. To hold otherwise would incentivize forum shopping for plaintiffs seeking to chill speech and transform the federal courts of Florida into a "safe haven" for those seeking to suppress free speech via expensive litigation.

### A. The Florida anti-SLAPP Statute's Fee Shifting Provision Does Not Conflict With Any Aspect of the Federal Rules of Civil Procedure

Plaintiffs agree that the relevant analytical framework under the *Erie* doctrine is well-established: "A federal court exercising diversity jurisdiction will not apply a state statute if a Federal Rule of Civil Procedure 'answers the question in dispute.'" *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1349 (11th Cir. 2018) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010)). "If no Federal Rule answers the question in dispute," the court undertakes "an unguided *Erie* inquiry to decide whether to apply the state statute or federal common law." *Carbone*, 910 F.3d at 1349 (citing *Hanna v. Plumer*, 380 U.S. 460, 471 (1965)). The court is to be mindful of "'whether failure to apply the state law would lead to different outcomes in state and federal court and result in inequitable administration of the laws or forum shopping.'" *Carbone*, 910 F.3d at 1349 (quoting *Royalty Network, Inc. v. Harris*, 756 F.3d 1351 (11th Cir. 2014)).

Despite Plaintiffs' reliance on *Carbone*, that opinion did ***not*** address the substantive aspects of the anti-SLAPP statute such as fees. Instead, in *Carbone*, the Eleventh Circuit was asked to

evaluate whether "the *dismissal provision* of the *Georgia* anti-SLAPP statute" applied in federal court. 910 F.3d at 1350 (analyzing Ga. Code Ann. § 9-11-11.1(b)(1)) (emphases added). The *Carbone* court held that the anti-SLAPP statute's pleading standard was procedural, and directly conflicted with the Federal Rule of Civil Procedure 8, and thus, under well-established *Erie* precedent, did not apply. *Id.* And there is no question that certain other aspects of Florida's anti-SLAPP statute, such as those provisions that pertain to the sequencing and timing of motion practice, are also procedural in nature and thus inapplicable. *See* Fla. Stat. Ann. § 768.295(4).[2]

Plaintiffs ignore, however, that there are numerous provisions within the anti-SLAPP statute that are substantive, and which thus do not implicate the *Erie* doctrine. The requirement that any governmental entity found to have violated the anti-SLAPP statute is obligated to make a report to the Florida Attorney General is one example. Fla. Stat. Ann. § 768.295(4). The award of reasonable attorney fees and costs is likewise substantive, in that it alters the common law American rule on fees and replaces it with a statutory fee shifting provision.[3] The Eleventh Circuit has consistently held that state law claims for attorneys' fees are "unequivocally substantive for *Erie* purposes." *Showan v. Pressdee*, 922 F.3d 1211, 1225 (11th Cir. 2019); *Trans Coastal Roofing Co. v. David Boland, Inc.*, 309 F.3d 758, 760 (11th Cir. 2002) ("Since Boland's claim for

---

[2] As in *Carbone*, other Circuits that have held that certain procedural aspects of state anti-SLAPP statutes cannot be imported into federal court, but then refrained from opining as to the applicability of attorneys' fees provisions. *See Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1335 n.3 (D.C. Cir. 2015) (holding procedural aspects of D.C. anti-SLAPP statute conflicted with Federal Rules, but suggesting attorneys' fees provisions may be subject to different analysis); *Klocke v. Watson*, 936 F.3d 240, 245 (5th Cir. 2019), *as revised* (Aug. 29, 2019) (holding only that procedural and evidentiary burden-shifting provisions of Texas anti-SLAPP statute conflicted with Federal Rules).

[3] It is this distinction between procedural and substantive aspects of anti-SLAPP law that accounts for Netflix's withdrawal of its anti-SLAPP motion in *Fairstein v. Netflix, Inc*. In that litigation, Netflix sought to preserve its right to avail itself of certain procedural aspects of California's anti-SLAPP statute if the action were to be transferred to the Southern District of New York. *Special Motion to Strike Pursuant to California Anti-SLAPP Act, Cal. C.C.P. § 425.16*, *Fairstein v. Netflix, Inc.*, No. 20-cv-180 (M.D. Fla. May 18, 2020), ECF No. 30. Netflix subsequently withdrew the motion after the Second Circuit issued its opinion in *La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020), which held for the first time that the California anti-SLAPP law did not apply in the Second Circuit.

attorneys' fees sounds in state law and reaches us by way of federal diversity jurisdiction, we apply the substantive law of Florida, the forum state.") (citation omitted).

Indeed, the fee shifting provision in the Florida anti-SLAPP statute has been applied without reservation by Florida district courts and the Eleventh Circuit in other anti-SLAPP cases, including as recently as September 29, 2020 by the Honorable Judge Ungaro. *See Ener v. Duckenfield*, No. 1:20-CV-22886-UU, 2020 U.S. Dist. LEXIS 181407, at *12-14 (S.D. Fla. Sept. 29, 2020) (dismissing plaintiff's claims pursuant to Rule 12(b)(6) and holding attorney's fees should be awarded under Florida anti-SLAPP statute); *Anderson v. Best Buy Stores L.P*, No. 5:20-CV-41-OC-30PRL, 2020 WL 5122781, at *4 (M.D. Fla. July 28, 2020), *report and recommendation adopted sub nom. Anderson v. Coupons in News*, No. 5:20-CV-41-OC-30PRL, 2020 WL 5106676 (M.D. Fla. Aug. 31, 2020) (same); *Parekh v. CBS Corp.*, No. 19-11794, 2020 WL 3400679, at *6 (11th Cir. June 19, 2020); *Tobinick v. Novella*, 884 F.3d 1110, 1119 (11th Cir. 2018).[4]

**B.     Plaintiffs Have Not Cited (And Cannot Cite) Any Eleventh Circuit Case Law Holding That the Florida anti-SLAPP Statute's Attorneys' Fees Provision Is Inapplicable in Federal Court**

Despite the multiple cases in the Eleventh Circuit awarding fees under the anti-SLAPP statute's fee-shifting provision, Plaintiffs argue that the Court should somehow disregard those decisions, while failing to cite a single Eleventh Circuit opinion in which the Court, *sua sponte* or otherwise, that has so much as even suggested that anti-SLAPP statute's attorneys' fees provision is "procedural" and thus inapplicable in federal court. The Eleventh Circuit's awards of fees under this statute are in line with other Circuit Courts that have had occasion to examine anti-SLAPP statutes similar to Florida's, which have held that other states' anti-SLAPP statutes can be read in harmony with the Federal Rules of Civil Procedure. *See Godin v. Schencks*, 629 F.3d 79, 91 (1st

---

[4] *See also Adelson v. Harris*, 774 F.3d 803, 809 (2d Cir. 2014) (analyzing the Nevada anti-SLAPP statute and delineating between the substantive aspects of the statute (a particular form of immunity from civil liability and mandatory fee shifting) and the procedural aspects of the law (a bar on discovery until resolution of the anti-SLAPP motion)).

Cir. 2010) (holding Maine anti-SLAPP law applied in federal court); *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999) (holding California anti-SLAPP law applied in federal court); *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 182–83 (5th Cir. 2009) (applying Louisiana anti-SLAPP statute).

This Court can and should therefore apply the substantive elements of Florida's anti-SLAPP statute, including the attorney-fee shifting provisions. Fla. Stat. Ann. § 768.295(4). Upholding this distinction would be consistent with other courts in this Circuit, and to hold otherwise would result in different consequences for meritless claims brought in federal court than in state court, inviting forum-shopping. *See Godin v. Schencks*, 629 F.3d 79, 92 (1st Cir. 2010) ("[W]ere [the Maine anti-SLAPP statute] not to apply in federal court, the incentives for forum shopping would be strong: electing to bring state-law claims in federal as opposed to state court would allow a plaintiff to . . . circumvent any liability for a defendant's attorney's fees or costs.").

### C. <u>Rule 11 Does Not Override the Florida anti-SLAPP Statute</u>.

Nor is it the case, as Plaintiffs argue, that the Florida anti-SLAPP statute's attorneys' fees provision is somehow the functional equivalent of Federal Rule of Civil Procedure 11. Rule 11 is a disciplinary statute; it "is not designed to make the movant whole for any and all injuries sustained as a result of a frivolous filing, and any monetary sanctions one party happens to receive from the other are incidental to the rule's deterrent purpose." *Showan*, 922 F.3d at 1226; *Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 553 (1991) ("The main objective of the Rule is not to reward parties who are victimized by litigation; it is to deter baseless filings and curb abuses.") (citation omitted).

In *Showan*, for example, the defendants asserted baseless defenses, only to drop them at the eve of trial. The plaintiff sought attorneys' fees under Ga. Code Ann. § 9-11-68, the Georgia statute that grants attorneys' fees to a prevailing party in a tort action when it is found that the opposing party made a frivolous defense. *See Showan*, 922 F.3d at 1222-23. The defendants argued that Rule 11 "addressed the same subject" as the Georgia statute and that, therefore, that

the state statute did not apply in Federal Court. The Eleventh Circuit disagreed, holding that Rule 11 was concerned with forward-looking deterrence, whereas the Georgia Code § 9-11-68 "compensates prevailing parties for litigation costs and other injuries endured because of an opposing party's decision to present meritless," claims or defenses. *Showan*, 922 F.3d at 1225.

Similarly, while the trigger for a fee award under the Florida anti-SLAPP statute is the filing of a meritless claim designed to suppress First Amendment speech, the attorneys' fees provision is designed to primarily compensate the victim of the SLAPP, not to punish the plaintiff. There is thus no conflict between Rule 11 and Florida Statute § 768.295(4), and Plaintiffs have failed to cite a single case that says so. There is no reason why the fee-shifting provisions should not apply here.

## II.     PLAINTIFFS ARE NOT ENTITLED TO ANY FEE SHIFTING UNDER THE FLORIDA ANTI-SLAPP STATUTE

After arguing that the Florida anti-SLAPP statute does not apply, Plaintiffs then incongruously argue that it is they who should be awarded their attorneys' fees. This argument turns the Florida anti-SLAPP statute on its head, and finds no support in either the text of the Florida anti-SLAPP statute itself, or any precedent interpreting it.

### A.     The Purpose of the Statute Is to Protect First Amendment Speech, Not Reward Defamation Plaintiffs

The Florida anti-SLAPP statute's grant of fees is intended to award fees solely to parties whose First Amendment rights have been suppressed. This intent is clear by considering the term "prevailing party," within context with the rest of the clause, which provides for fee awards "in connection with a claim that an **action** was filed in violation of this section." Fla. Stat. Ann. § 768.295(4) (emphasis added). An action is a "civil or criminal judicial proceeding." *See* ACTION, Black's Law Dictionary (11th ed. 2019). An "action" is not a motion.

The proper interpretation of the attorneys' fees provision is clear when read in harmony with the remainder of the statutory text. A fee award is appropriate when a party brings an "action" that is "without merit" "primarily because" the other party has "exercised the constitutional right

of free speech." A defendant in a SLAPP suit, such as Netflix, is not responsible for filing an "action," and therefore is not subject to payment of attorneys' fees. The sole reason why the Florida anti-SLAPP statute mentions "prevailing party" as opposed to simply using the terms "plaintiff" and "defendant" is to account for the possibility that a defendant could file a SLAPP action as a retaliatory counterclaim or cross-claim. Any contrary interpretation loses sight of the statutory forest for the trees: the Florida anti-SLAPP statute is designed to protect creators of First Amendment-protected works, like television programs, from meritless suits designed to suppress that protected free speech. *See, e.g.*, *Anderson*, 2020 WL 5122781, at *4 (awarding fees to defendant); *Rigmaiden v. NBCUniversal Media LLC*, No. 2018-015032-CA-01, 2019 WL 10252763, at *4 (Fla. Cir. Ct. Dec. 31, 2019) (same). It is not to saddle the creator of a First Amendment-protected work, already burdened with an expensive litigation, with the threat of fees.

Plaintiffs cite to no authority, and Netflix is unable to locate any precedent that would support the absurd proposition that a defamation plaintiff should be permitted to weaponize the Florida anti-SLAPP statute and then use it as an additional cudgel against a defendant who exercises its First Amendment rights. Indeed, their arguments underscore the need to protect creators of expressive works from those who would suppress their speech.

### B.  Plaintiffs Lawsuit Was Filed "Primarily" Because Netflix Exercised Its Constitutional Right of Free Speech in Connection with a Public Issue

Plaintiffs' novel claim for fees is further belied by the express language of the statute, which provides for fees when claims are filed "primarily because" a defendant exercises its constitutional right of free speech. Fla. Stat. Ann. § 768.295(3). The drafters of the Florida anti-SLAPP statute contemplated that creative plaintiffs would find ways to try and plead around the statute, and thus the Florida Legislature deliberately framed the anti-SLAPP in terms of the First Amendment rights to be protected, not the labels of the particular causes of action that the plaintiff brought. *See The Florida Senate Bill Analysis and Fiscal Impact Statement re Strategic Lawsuits against Public Participation CS/SB* 1312, Florida One Hundred Seventeenth Regular Session

(March 11, 2015) (Judiciary Committee and Senator Simmons) ("Because of the variety of nominal bases for a SLAPP suit, laws to prevent them, known as anti-SLAPP laws, are phrased in terms of rights to be protected."). Plaintiffs freely admit that all of their claims target the same underlying conduct: the alleged use of their logos in an expressive work protected by the First Amendment. Consequently, Plaintiffs attempt to shift fees fails.

Netflix's entitlement to fees does not evaporate depending on how and in what sequence Plaintiffs' claims are disposed. As Netflix's Rule 12(b)(6) motion establishes, every claim in the Complaint is fatally deficient. Even if the Court dismisses fewer than all of Plaintiffs' claims, attorneys' fees are still warranted under the Florida anti-SLAPP statute, because Plaintiffs' action was brought with the primary intent to suppress Netflix's speech. If, for example, GEO Transport's claims (all six of which are based on a single, two-second image of a bus which cannot possibly rise to the level of defamation as a matter of law) are dismissed in their entirety, then Netflix will have prevailed over GEO Transport, and should be compensated for having to defend against GEO Transport's meritless claims.

Similarly, even if one or more of GEO Group's claims were to survive Netflix's motion, Netflix's right to eventually recover attorneys' fees should be preserved until the remaining claim(s) are eventually unsuccessful. All that is required for the Court to award fees under the Florida anti-SLAPP statute is a finding that GEO Group's claims lack merit and were filed "primarily because" Netflix exercised its constitutional right of free speech. Fla. Stat. Ann. § 768.295(3). The Florida anti-SLAPP statute does not limit the award of fees solely to when the SLAPP suit can be fully eliminated upon a motion to dismiss standard. Fla. Stat. Ann. § 768.295(4).

The intent of the Florida legislature is clear: plaintiffs such as GEO Group and GEO Transport should be obligated to compensate a defendant like Netflix who is forced to pay legal fees in order to exercise and defend its constitutional right to free speech. This Court should apply that substantive aspect of Florida law.

## **CONCLUSION**

For the foregoing reasons and those set forth in Netflix's contemporaneous Motion to Dismiss, Netflix respectfully requests that this Court award reasonable attorney fees and costs to Netflix pursuant to Florida Statues Section 768.295(4), and provide such other and further relief as the Court deems just and proper.

Dated: October 7, 2020

        **PRYOR CASHMAN LLP**
*Attorneys for Netflix, Inc.*
Ilene S. Farkas (admitted *pro hac vice*)
James G. Sammataro
Florida Bar No. 0208060
Michael B. Adelman (admitted *pro hac vice*)
201 South Biscayne Boulevard, Suite 2700
Miami, Florida 33131
Telephone: (786) 582-3011
Facsimile:  (786) 582-3004

*s/ James G. Sammataro*
Florida Bar No. 520292

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 7, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send Notices of Electronic Filing to all counsel of record.

*s/ James G. Sammataro*
James G. Sammataro